# CHARLES W. SLAGLE AND RANDOLPH BARTON, JR., TRUSTEE,

## *vs.*

## CLARENCE L. CRISE.

*Insurance policy : security for debt; lapse; fault of borrower.*

A borrower, as additional security for a mortgage loan, delivered to the lender a life insurance policy on his (the borrower's) life, and covenanted to pay the premiums thereon, when and as they became due, until principal and interest of the said loan were paid; to insure the payment of interest and premiums he directed his trustees out of certain trust income which they collected for him, to pay to the lender a sum sufficient for the payment of such interest and premiums as they accrued, and the lender requested the trustee to thenceforth pay such sum to him; the lender having neglected and failed to pay the life insurance premiums, and the policy having lapsed, it was: *Held,* that the lapse of the policy was attributable to the negligence of the lender, and not to that of the borrower. ·

p. 451

*Decided December 13th, 1916.*

Appeal from Circuit Court No. 2 of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Randolph Barton,* for the appellants.

*John Watson, Jr.,* and *Saml. K. Smith,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellee, Clarence L. Crise, on the 4th day of October, 1911, borrowed of the appellant, Charles W. Slagle, the sum of five thousand dollars to be repaid with interest on the 11th day of October, 1917, and to secure the payment of said sum and interest he executed and delivered to Slagle a mortgage conveying unto him the property therein mentioned and described.

This property had been previously conveyed on October 11th, 1907, to the Mercantile Trust and Deposit Company of Baltimore City to be held by it in trust until October 11th, 1917, when it is to revert to the appellee, if then living, but if dead at such time, to pass to those mentioned in the deed of conveyance. Because of the possibility of the appellee dying before the time mentioned in the deed for the property to revert to him, it was agreed as a further security for the payment of the money so borrowed that Crise should insure his life for the sum of five thousand dollars and assign the policy to Slagle. In pursuance of such agreement the following clause was inserted in the mortgage:

> "The said Clarence L. Crise has also delivered to the said Charles W. Slagle in addition to this mortgage, for the purpose of securing the payment of said principal note and said interest notes a policy of insurance on the life of the said Clarence L. Crise for the

sum of five thousand dollars, issued by the Travelers'
Insurance Company of Hartford, Connecticut, the an-
nual premium on which the said Clarence L. Crise
covenants and agrees to pay when and as it falls due,
until said indebtedness and interest thereon is fully
paid."

The mortgage also contains the assent of the mortgagor to
the passage of a decree, under the local Statute of Baltimore
City, for the sale of the mortgaged property in case of
default in any of the covenants of the mortgage. The appel-
lant Slagle on April 27th, 1916, filed his petition upon which
a decree was passed on the same day for the sale of said
property.

Upon the passage of the decree the trustee named therein
advertised the mortgaged property for sale and thereupon the
appellee Crise filed his bill in Circuit Court No. 2 of Balti-
more City asking among other things that Slagle and the
trustee be enjoined and restrained from selling or offering
for sale the property mentioned and described in the mort-
gage or any part of it.

The facts alleged in his bill are substantially as follows:
The appellee, Crise, on the day of the execution and delivery
of the mortgage also executed and delivered unto Slagle the
following assignmnt:

"For the purpose of securing the prompt payment
of the annual premium due and to fall due on a cer-
tain policy of life insurance on my life, referred to
in a mortgage of this date, delivered to Charles W.
Slagle by me to secure a loan of five thousand dollars
($5,000.00); and for the further purpose of securing
the prompt payment of the interest on the said loan of
$5,000.00 this day made to me by Charles W. Slagle,
and secured by mortgage of even date herewith, I do
hereby assign to said Charles W. Slagle $742.20 of my
annual income, payable to me by the Mercantile Trust
and Deposit Company of Baltimore, and I hereby au-
thorize said Company to pay the same to said extent,

to the said Charles W. Slagle, as the same falls due and becomes payable."

On the day of the execution and delivery of the aforegoing assignment Slagle wrote to the Mercantile Trust and Deposit Company as follows:

"I wish to give you notice that, for the purpose of securing a loan of $5,000.00 on this day made to him by me, and the interest thereon to accrue, by mortgage dated the 4th day of October, 1911, Clarence L. Crise has granted and conveyed to me all his interest derived under the will of his father, the late John L. Crise, and also all of his interest in and to that property mentioned and referred to in a deed of trust from him * * * to your Company, bearing date of October 11th, 1907, and now recorded, etc. Mr. Crise has also assigned to me $742.20 per annum of his income, which has heretofore been paid by you to him. This is for the purpose of securing the premium on a certain policy of insurance on the life of the said Clarence L. Crise, in my favor as additional security, and also the interest due annually on said loan of $5,-000.00.

"I will be obliged to you if you will take note of this fact and hereafter will, to the extent of $742.20, pay the income to me instead of to the said Clarence L. Crise."

The Trust Company thereafter regularly deducted from the income of Crise an amount sufficient to meet the payments of said interest and life insurance premium and placed the same to the credit of Slagle, and the interest has always been promptly paid to Slagle by the Trust Company when and as it became due and payable.

The premium on the policy falling due on October 11th, 1912, was paid by check drawn by the Trust Company to the order of Slagle and by him endorsed to the Insurance Company.

Thereafter, on December 3rd, 1912, Crise, to avoid the great expense of an endowment policy, obtained the consent of Slagle to substitute therefor a straight life insurance policy, upon which the premium for a like amount of insurance was only $89.64; and the old policy was surrendered and the new one issued and assigned to Slagle, and on the 17th day of December, 1912, Slagle again wrote to the Trust Company, saying:

"Referring to the order heretofore filed with your Company by Clarence L. Crise under date of October 4th, 1911, by which he assigned to me $742.20 out of the annual income payable to him by your Company for the purpose of securing payment of the annual premium due upon a policy of life insurance referred to in said order, and the interest upon the mortgage of $5,000.00 held by me; I beg to advise you that the insurance policy which was given with said mortgage has been exchanged for an insurance policy in the Travelers' Insurance Company, upon which the annual premium amounts to the sum of $89.60 only; so that hereafter the amount of the annual interest and insurance premium referred to in said order will be the sum of $389.60 instead of the sum of $742.20, as mentioned in said order."

The first premium on the new policy was paid March 6th, 1913, by check of the Trust Company payable to the order of Slagle and by him endorsed to the Insurance Company. This was the last premium paid upon the policy, and thereafter it lapsed and became void. This fact, the bill alleges, was not known to Crise until communicated to him by Slagle. Crise thereafter applied for reinstatement, and for new insurance, but was refused both because of the fact that a short while before he had suffered from a stroke of paralysis, and because of this physical impairment he has since been unable to obtain any insurance upon his life.

The bill alleges that the "trustee named in said decree has not only threatened to advertise said property for sale

under said decree, *alleging that said Clarence L. Crise has defaulted in his covenant to pay the premium on said life insurance policy,* but has actually inserted such an advertisement in the Baltimore Sun, etc., and this fact is admitted by the answer to the bill, in which no other default of Crise is mentioned or referred to."

The answer admits many of the facts alleged in the bill, but as to the assignment of part of the annual income of Crise, it alleges that when it was presented to the Trust Company it refused to accept it, although they said "they would place it on file." The arrangement, if any, thereafter made between the company and Crise in respect to a compliance with the assignment was, as the answer alleges, unknown to Slagle; that he "assumed that the Trust Company would in some way respect the assignment and that he would have the benefit of the additional security intended to be given by said assignment, should occasion arise to have recourse to it, but * * * especially did he not know of any account being opened by said Trust Company with him on their books."

The answer also alleges that: "The money reserved from the income as aforesaid was for the single and express purpose of securing him, the defendant, against the necessity of paying said premium should the said Crise fail to do so. The obligation to see to it that the premiums were paid remained with the said Crise under the provisions of his covenant;" and that he by no agreement even undertook to pay the premiums or release Crise from his obligations to pay them."

The Court, after hearing evidence in the case, passed the following decree:

"It is this 5th day of July, 1916, by the Circuit Court No. 2 of Baltimore City, adjudged, ordered and decreed that the defendants be and they are hereby perpetually enjoined and restrained from making sale of the property described in the mortgage from Clar-

ence L. Crise to said Slagle mentioned in these pro-
ceedings or any part thereof because or on account of
the non-payment of the life insurance premiums in
said mortgage covenanted to be paid or on the assump-
tion that such non-payment constituted a default.

"The question regarding fire insurance mentioned
in the evidence and adverted to by counsel at the hear-
ing not having been raised by the pleading in this
cause, the same is not considered by the Court and this
decree is passed without prejudice to any of the parties
to litigate said question in any manner they may deem
proper.

"It is further adjudged, ordered and decreed that
each party pay his own costs in this proceeding."

It is from the aforegoing decree that this appeal has been
taken.

The question involved in this appeal is, has there been a
breach by Crise of his covenant, in the mortgage, to pay the
premiums on the policy of life insurance when and as they
become due and payable, authorizing a sale of said property
under the terms and conditions of the mortgage?

In his assignment of his annual income to Slagle he
directed that the amount assigned, which was sufficient to
pay both the interest on the mortgage and the premiums on
the policy, as the same became due and payable, should be
paid by the Trust Company to Slagle, and the assignment
was so understood by Slagle, for on the same day that the
assignment was executed and delivered to him, he wrote to
the Trust Company notifying it that he held such assign-
ment and saying to it, "I will be obliged to you if you will
take notice of this fact and hereafter will, to the extent of
$742.20 (the amount required annually to pay the interest
and premiums) *pay the income to me instead of the said
Clarence L. Crise.*"

The assignment was made to secure the prompt payment
of both the interest on the mortgage and the premiums on

the policy, so that it could not lapse and become void, to the possible loss and injury of Slagle.

The money with which the premiums were to be paid was directed to be paid to Slagle, and it is a fair and reasonable interpretation of the assignment that when the money was received by Slagle he was to apply the same to the payment of the interest and premiums. This evidently was the understanding of the parties.

It is, however, alleged in the answer and stated in the testimony of Slagle that when the assignment was presented to the Trust Company it refused to accept it, or as he expresses it in his testimony, he was told that "they would put it on file, but they would not promise anything." Mr. Reynolds, secretary of the Trust Company, testified: "That we immediately upon the receipt of the assignment opened an account on our ledger called the Charles W. Slagle account and charged the Clarence L. Crise income monthly with $61.85 and credited the Slagle account with $61.85, and this continued until the amount was reduced," by reason of the change in the insurance policy, when thereafter the amount monthly credited to the Slagle account and charged against the Crise account was $32.47, and this continued until the time of taking testimony in this case. He further testified that the interest had always been promptly paid by the Trust Company to Mr. Slagle upon presentation to it of the interest notes and that on a number of occasions the notes were presented by Slagle at the office of the company, where the interest was paid to him.

Mr. Slagle when asked when and in what way he ascertained that the premiums had not been paid, he replied: "I happened to be in the Mercantile Trust and Deposit Company depositing my interest note and asked Mr. Reynolds about it, whether the insurance had been kept paid. That was the first time I knew anything about it. About two months ago." In May, 1916.

Although told, as he states, at the time when he presented the assignment to the Trust Company that it would not accept it, but would place it on file, nevertheless the interest on the mortgage was thereafter regularly paid to Slagle. The authority of the Company to pay to him this interest was derived from the assignment, and by such assignment like authority was given to the Company to pay to him the amount of the premiums, and yet it seems that he never called upon it for the amounts so assigned unto him for the payment of the premiums. Crise, however, by his assignment to Slagle had provided for the money with which the premiums were to be paid, and had directed the same to be paid to him that he might pay the premiums himself without depending upon Crise to pay them, and whatever might have been told him by the Company when the assignment was first presented to it he thereafter knew, by the payment of interest to him, that the Company recognized the assignment and the direction contained therein to pay to him such interest, and as the money with which the premiums were to be paid was included in the assignment and like the interest was directed to be paid to him, it certainly devolved upon him to call upon the Trust Company for its payment. Had he done so it would have been paid to him.

The only directions given by Crise to the Trust Company in respect to the interest and the premiums on the policy to be paid to Slagle, as is disclosed by the Record, were those contained in the assignment, and he knew nothing of the alleged refusal of the Company to accept the assignment and to carry out its directions. He knew, however, that the amount of $742.20 assigned by him to Slagle to meet the payment of such interest and premiums was regularly deducted from his annual income, and he had every reason to believe, so far as the Record discloses, that the amounts for the payment of premiums were being regularly paid to Slagle and by him to the Insurance Company.

Upon the facts and circumstances of this case it cannot be said that there has been such a default by Crise, in the payment of the premiums of the policy as will by the terms and conditions of the mortgage authorize a sale of the mortgaged property.

We have examined and considered the authorities cited by the appellant's counsel (*Killoran* v. *Sweet,* 72 Hun. [N. Y.], 194; *Dungan, Admx.,* v. *Mutual Benefit Life Ins. Co.,* 46 Md. 491, and others), and find nothing in the views that we have expressed at variance with those cases. They differ widely from the case at bar both in facts and relief sought.

As we find no error in the passage of the decree appealed from, it will be affirmed.

> *Decree affirmed, the appellant to pay the costs in this Court and each party to pay his costs in the Court below as ordered by that Court.*